## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| MARCIA KIMBLE, *individually, and on behalf of all others similarly situated,* | ) ) ) ) |
| Plaintiff, | ) Civil Action No. 2:24-cv-12987 ) ) CLASS ACTION |
| v. | ) ) |
| USHEALTH GROUP, INC., USHEALTH ADVISORS, L.L.C., and FREEDOM LIFE INSURANCE COMPANY OF AMERICA, | ) ) Jury Trial Demanded ) ) ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Plaintiff, Marcia Kimble ("Plaintiff," "Kimble" or "Ms. Kimble"), individually, and on behalf of all others similarly situated, and through her undersigned counsel, submits this Class Action Complaint against Defendant USHealth Group, Inc. ("USHealth Group") Defendant USHealth Advisors, L.L.C. ("USHealth Advisors"), and Defendant Freedom Life Insurance Company of America ("Freedom Life") (collectively "Defendants"). Plaintiff states:

### BACKGROUND

1. Ms. Kimble brings this case to protect her privacy rights, namely the right to be left alone from unwanted telemarketing communications.

2. Specifically, this case is about stopping incessant telemarketers like Defendant from placing incessant and unwanted communications the phones of Kimble

and likely thousands of other persons who have placed their phone numbers on the National Do-Not-Call Registry ("DNC List").

3. Kimble brings this class action lawsuit, individually, and on behalf of all others similarly situated, against Defendant for placing calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the TCPA's corresponding regulations.

4. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' consumers' privacy and the right to be left alone from unwanted telemarketing communications.

5. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6. The TCPA affords protections for people who registered their phone numbers on the National Do Not Call Registry. Specifically, the TCPA provides that each person who receives more than one call on their phone after being registered on the National Do Not Call Registry is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(c) *et seq.*; 47 C.F.R. § 64.1200(c).

7. Since 2003, persons who register their cell phone numbers on the DNC List are considered "residential subscribers" for the purpose of 227(c)(5) and the DNC List. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

8. Defendant improperly sent text messages to the phones of Kimble and the putative class members despite their phone numbers being on the DNC List.

9. The receipt of telemarketing calls is a rampant problem in this country. For example, in the first nine months of 2024 alone, approximately 38.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Oct. 2, 2024).

10. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

11. In fact, in 2023 alone, there were over two million do-not-call complaints to the FTC about unwanted telemarketing calls. Federal Trade Commission, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 8, 2024) *available at*: https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited Oct. 4, 2024).

12. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

14. This Court has personal jurisdiction over Defendants. While each of Defendants are based in Texas, each systematically conducts business in the State of Michigan.

15. Additionally, Defendants sent text messages to Kimble on her cell phone which bears a "313" area code.

16. Through those acts, as well as those detailed in this Complaint, Defendants knowingly and purposefully availed themselves to the State of Michigan.

17. Kimble has been a citizen of and has resided in this District at all times relevant to this Complaint.

18. Kimble received the text messages at issue and experienced the associated harm within this District.

19. For these reasons, and as set forth in this Complaint, this Court has personal jurisdiction over the parties to this case and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

## PARTIES AND BACKGROUND

20. Ms. Kimble is an individual who resided in Detroit, Michigan at all times relevant to this Complaint.

21. Defendant USHealth Group, Inc. is a corporation organized under the laws of Delaware and which maintains its principal place of business in Ft. Worth, Texas.

22. USHealth Group is an insurance holding company that purports to provide various insurance products. Through its wholly owned subsidiary USHealth Advisors, LLC, USHealth Group sells insurance underwritten by its wholly owned subsidiary, Freedom Life Insurance Company of America.

23. USHealth Group's website is www.ushealthgroup.com. The USHealth Group website states, in part, "Insurance underwritten by: Freedom Life Insurance Company of America . . . ."

24. USHealth Group also has a website with a domain name for its agents that is www.ushagent.com, followed by a back slash for the name of the agent.

25. Defendant USHealth Advisors, LLC is a limited liability company organized under the laws of Texas, and which maintains its principal place of business in Ft. Worth, Texas.

26. USHealth Advisors is a wholly owned national health insurance distribution division of USHealth Group that sells individual health coverage and supplementary products underwritten by The Freedom Life Insurance Company of America.

27. Freedom Life Insurance Company of America is a life insurance company and insurance underwriter that is wholly owned by USHealth Group.

28. Defendants market their insurance products, in part, through placing telemarketing phone calls and text messages to consumers.

29. On information and belief, Defendants require any marketing used by its agents, including telemarketing, to be approved by Defendants.

30. Defendants' telemarketing text messages have been the subject of multiple consumer complaints.

31. One consumer complained:

I keep getting texts from US Health Advisors trying to sell 'health insurance plans.' . . . I block them and then get a text from another number. . . .

Anyone know how to get off their list? (sic) Just tired of the junk texts and whack a mole number blocking. Should I stop blocking? I tested not blocking and got the same number twice. Blocked and then a new number came through.

32. Another consumer complained:

. . . I am on the registered DNC list and 'representatives' of this company have been harassing me with upwards of 15 texts and/or calls a day. I block every number, and they keep reaching out from new ones with new 'representatives.' . . . This is ridiculous and unwanted.

33. Another consumer angrily complained:

. . . [T]hey deserve a punch in the face for every text message they send. Getting something from them at least twice a day, even though I never signed up for ANY health insurance, and I have never relied to anything of theirs either.

## DEFENDANTS' UNWANTED COMMUNICATIONS

34. At all times relevant to this Complaint, Ms. Kimble owned a cell phone, bearing the number (313) XXX-4318.

35. Kimble registered that cell phone number on the DNC List on April 25, 2019, for the purpose of being left alone by telemarketers.

36. The account for Kimble's phone is held in her personal name and not in the name of a business.

37. Kimble Plaintiff uses her phone primarily for residential purposes, such as communicating with friends and family members.

38. Kimble and the putative class members did not provide Defendants "prior express written consent" as that term is defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent, to Defendants or anyone acting on Defendants' behalf to send text messages to her cell phone.

39. In December 2022, Defendant placed at least seven (7) calls and/or text messages to Ms. Kimble for the purpose of soliciting health and/or life insurance policies without express written consent.

40. On December 7, 2022, Defendants, or someone acting on Defendants' behalf sent Kimble a text message on her cell phone, stating: "Hey Marcia, this is Jordan with BIG. There's still time to change your health plan. Would you like to get better coverage for less? Reply end to stop."

41. On December 8, 2022, Defendants, or someone acting on Defendants' behalf sent Kimble a text message on her cell phone, stating: "Marcia, this is Jordan with BIG. I reached out yesterday about health plans. I'm sure you were busy! Can you confirm your DOB and zipcode (sic) if interested?"

42. These text messages were telephone solicitations as the purpose of the text messages was to sell Kimble health insurance products.

43. These text messages were confusing to Kimble as she never requested to be contacted by Defendants or anyone else about insurance products.

44. So as to determine the identity of who was sending her these unwanted text messages, Kimble asked for information about who was texting him.

45. The person responded that the sender's name was Jordan Elkin, that his website was www.ushagent.com/jordanelkin and that the website that contained information about insurance plans was www.ushealthgroup.com.

46. The person also responded that their Michigan state insurance license number was 1163962 and their NPN number was 20228535.

47. At all times relevant to this Complaint, Jordan Elkin was an agent of USHealth Group and USHealth Advisors. A true and correct copy of the printout from USHealth Group website identifying Elkin as a USHealth agent is attached as Exhibit "A."

48. The USHealth Group webpage for Mr. Elkin identifies Mr. Elkin's e-mail address as JORDAN.ELKIN@USHAdvisors.com. The webpage also identifies various insurance products and includes a statement that "all products are underwritten by Freedom Life Insurance Company" which is a "wholly owned subsidia[ry] of USHealth Group, Inc.

49. Furthermore, Elkin was appointed and licensed to sell Freedom Life Insurance in Michigan. A true and correct copy of Elkin's Michigan insurance appointment confirmation is attached as Exhibit "B."

8

50. The only insurance Elkin is licensed to sell in Michigan is that underwritten by Freedom Life. *Id*.

51. Therefore, all persons in Michigan called by Elkin for the purpose of soliciting healthcare or life insurance were made exclusively for USHealth and/or its wholly owned subsidiary Freedom Life.

52. Mr. Elkins acted as an agent of USHealth Group and USHealth Advisors and was assigned an email address JORDAN.ELKIN@USHAdvisors.com.

53. The foregoing acts and omissions violate the TCPA as Kimble's and the putative class members' phone numbers were on the DNC List at the time she and the putative class members received these and similar text messages from Defendants.

54. On information and belief, Defendants knew that they or those acting on their behalf should not have sent text messages to Kimble and the putative class members, yet sent them text messages anyway.

55. The text messages Defendants placed to Kimble and the putative class members were harassing, irritating, invasive and annoying.

56. Defendants' text messages invaded Kimble's and the putative class members' right to privacy, namely the right to be left alone from unwanted telemarketing communications.

57. Defendants' text messages caused Kimble and the putative class members to waste time and be disrupted from their daily activities, addressing and/or responding to the unwanted calls.

## **DIRECT AND VICARIOUS LIABILITY**

58. Without the benefit of discovery, and because Defendants identity was disclosed by its agent through the telemarketing text messages at issue, Kimble assumes Defendants directly sent the text messages at issue.

59. However, if some or all the text messages were made by third-party/parties on behalf of Defendants, in the alternative, Defendants are vicariously liable for those calls.

60. On May 9, 2013, the FCC determined that telemarketers like Defendants could not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

61. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual

agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

62. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

63. If Defendants directly placed the text messages at issue to Kimble and the putative class members, Defendants are directly liable for the placing such text messages.

64. However, Defendants may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

65. If Defendants did not directly place the text messages at issue to Kimble and the putative class members, Defendants' third-party telemarketers had actual and/or apparent authority to act on behalf of Defendants.

66. Likewise, Defendants also ratified its agents' violations of the TCPA by accepting revenue generated through unlawful telemarketing communications.

67. On information and belief, Defendants controlled or had the right to control the marketing activities of those acting on its behalf.

68. On information and belief, Defendants acted as a principal to telemarketing agent(s) who were acting on their behalf.

69. Defendants are not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents' TCPA violations.

11

70. For the counts identified below, if Defendant directly placed the calls at issue, they are directly liable. Alternatively, to the extent any calls were made by a third-party agent(s) acting on Defendants' behalf, Defendants are vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

71. Ms. Kimble brings this claim on behalf of a class, pursuant to Federal Rule of Civil Procedure 23.

72. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Kimble seeks to represent the following class:

> **Do-Not-Call Registry Class:** All persons who from four years prior to the filing of this action through class certification: (1) whose telephone number was on the DNC List; (2) who received two or more calls or text messages from Jordan Elkin and/or Best Insurance Group within twelve months; and (3) those calls or texts were for the purpose of soliciting products or services of Defendants.

73. Kimble reserves the right to add administrative subclasses, or to amend the definition of the proposed classes, during the lawsuit proceedings.

74. The members of the proposed class are so numerous that joinder of all members is impracticable. Kimble reasonably believes that hundreds or thousands of people have been harmed by Defendants' actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Defendants or those acting on its behalf.

75. Members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

76. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed classes include, but are not limited to:

 a. Whether Defendants' conduct of placing calls to persons whose phone numbers are registered on the DNC List violates 47 U.S.C. § 227(c);

 b. Whether the calls were "solicitations" as defined by the TCPA;

 c. whether Defendants maintained and implemented legally sufficient protocols for obtaining consumer "consent" to place telemarketing calls to numbers on the DNC List;

 d. Whether Defendants' conduct violates the rules and regulations implementing the TCPA; and,

 e. Whether Kimble and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

77. Kimble's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and are based on the same legal theories.

78. Kimble and her counsel will fairly and adequately protect the interests of the members of the proposed class. Kimble's interests do not conflict with the interests of the proposed class she seeks to represent. Kimble has retained lawyers who are competent and experienced in consumer litigation, the TCPA and class-actions.

79. Kimble's counsel will vigorously litigate this case as a class action, and Kimble and her counsel are aware of their responsibilities to the putative members of the classes and will discharge those duties.

80. A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed classes in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

81. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

82. Questions of law and fact, particularly the propriety of placing of calls to phone numbers on the DNC List, predominate over questions affecting only individual members.

83. Defendants have acted or has refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the classes.

**Count I - Violations of the Telephone Consumer Protection Act ("TCPA"),**

**47 U.S.C. § 227(c) *et seq.* (National DNC List Violations)**

84. Ms. Kimble incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

85. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the DNC List to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

86. The penalty for each call placed in violation of the TCPA's restrictions on calling phone numbers registered on the DNC List is up to $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

87. In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the DNC List. *See* 47 U.S.C. §§ 227(c)(5)(A).

88. By sending text messages to Kimble's and the putative class members' phones, which were registered on the DNC List, Defendants violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

89. Defendants and/or those acting on its behalf knew or should have known that Kimble's and the putative class members' phone numbers were registered on the DNC List.

90. Defendants and/or those acting on its behalf willfully violated the TCPA when placing calls to Kimble's and the putative class members' phones.

91. Kimble and the putative class members are entitled to damages of up to $500.00 per violation for each call made by Defendants and/or those acting on its behalf

15

that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendants and/or those acting on its behalf willfully violated the TCPA.

WHEREFORE Plaintiff Marcia Kimble, individually, and on behalf of all others similarly situated, requests the Court enter judgment in her favor and against Defendants Defendant USHealth Group, Inc., USHealth Advisors, L.L.C., and Freedom Life Insurance Company of America (collectively "Defendants"), and grant the following relief:

A. Enter an order against Defendants, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Kimble as the class representative;

B. Enter an order appointing Kimble's counsel as class counsel;

C. Enter judgment in favor of Kimble and the putative class for all damages available under the TCPA, including statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendants willfully violated Section 227(c) of the TCPA and/or the applicable TCPA regulations;

D. Enter a judgment in favor of Kimble and the putative class members that enjoins Defendants from violating the TCPA's regulations prohibiting Defendants from placing calls to persons on the DNC List without first obtaining the proper form of consent;

E. Award Kimble and the class all expenses of this action, and requiring Defendants to pay the costs and expenses of class notice and administration;

F. Award all applicable pre- and post-judgment interest and court costs; and,

G. Award Kimble and the class such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, MARCIA KIMBLE, demands a jury trial in this case.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: November 11, 2024 | By: */s/ Jacob U. Ginsburg*<br>Jacob U. Ginsburg, Esq.<br>Michigan Bar ID No. P84351<br>Kimmel & Silverman, P.C.<br>30 East Butler Ave.<br>Ambler, PA 19002<br>Phone: (267) 468-5374<br>Facsimile: (877) 788-2864<br>Email: jginsburg@creditlaw.com<br>teamkimmel@creditlaw.com<br><br>By: */s/ Christopher E. Roberts*<br>Christopher E. Roberts, Esq.<br>Bar Number: 61895MO<br>Butsch Roberts & Associates LLC<br>7777 Bonhomme Avenue, Suite 1300<br>Clayton, MO 63105<br>Phone: (314) 863-5700<br>Email: croberts@butschroberts.com |