# EXHIBIT AA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_ _ _

MARCIA KIMBLE,

Plaintiff,

v. Case No. 24-12987

USHEALTH GROUP, INC., USHEALTH ADVISORS, L.L.C., and FREEDOM LIFE INSURANCE COMPANY OF AMERICA,

Hon. Matthew F. Leitman

*(Hearing conducted virtually using Zoom Video Communications)*

Defendants.
__________________________________/

SCHEDULING CONFERENCE

BEFORE THE HONORABLE MATTHEW F. LEITMAN
United States District Judge

Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan

Friday, February 28, 2025

*To obtain a copy of this official transcript, contact:*
*Robert L. Smith, Federal Official Court Reporter*
*(313) 234-2612 • robert_smith@mied.uscourts.gov*

APPEARANCES:

For the Plaintiff:

JACOB U. GINSBURG
KIMMEL & SILVERMAN, PC
30 E. Butler Avenue
Ambler, PA 19002
(267) 468-5374

CHRISTOPHER E. ROBERTS
BUTSCH, ROBERTS & ASSOCIATES, LLC
231 South Bemiston Avenue, Suite 260
Clayton, MO 63105
(314) 863-5700

For the Defendants:

JEFFREY A. BACKMAN
GREENSPOON MARDER LAW
200 E. Broward Boulevard, Suite 1800
Fort Lauderdale, FL 33301
(954) 491-1120

TABLE OF CONTENTS

MATTER ................................ PAGE
Scheduling Conference.................................. 4

EXHIBITS: Offered Received

(No exhibits offered)

Detroit, Michigan *(Remote proceedings)*
Friday, February 28, 2025
at about 11:31 a.m.

_ _ _

(Court and Counsel present via Zoom Video Communications.)

THE LAW CLERK: The United States District Court for the Eastern District of Michigan is now in session, the Honorable Matthew F. Leitman, United States District Judge, presiding.

The Court calls Case No. 24-12987, Marcia Kimble v. USHEALTH Group, Inc., et al.

Counsel, please state your appearances for the record.

MR. GINSBURG: Good morning, Your Honor. This is Attorney Jacob Ginsburg, from Kimmel & Silverman. I'm here for the plaintiff, punitive class representative, Marcia Kimble. And I'm joined by my co-counsel, Mr. Roberts.

MR. ROBERTS: Good morning, Your Honor.

THE COURT: Good morning.

MR. BACKMAN: Good morning, Your Honor. Jeffrey Backman for the defendants.

THE COURT: All right. Good morning. Thanks to all of you for joining me.

I wanted to follow up on an issue that was raised

in the discovery plan and in the defendants' answers. I don't usually have conferences like this, but I noticed that the defendants referenced -- at least their belief that there may be lurking in the background here, some sort of arbitration agreement. I wanted to follow up on that and understand more about that, and see if some initial focus discovery on whether there is arbitration here makes sense.

So, Mr. Backman, can you fill me in, in terms of what you were thinking there?

MR. BACKMAN: Sure, of course. So there's some confusion on our end with some of the issues in the case. Marcia Kimble is suing USHEALTH Advisors, but if you notice in the allegations in the Complaint she refers to text messages relating to an entity known as what they refer to as BIG, Best Insurance Group. My client has no affiliation with Best Insurance Group. In fact, it's a competitor in the market space.

So there's some confusion, from our perspective, as to what is actually at issue here, what text messages are at issue here, whether the plaintiff has sued the proper party.

Separate and apart from that, there is what I would call kind of an older lead, although these text messages here, from the reference in the Complaint, are December 7th and 8th of 2022, so a little older than one might otherwise expect.

There is a lead with this plaintiff's telephone number that my client was able to find. And in many situations, the website opt-in forms that are utilized by individuals to provide their name and telephone number and other information consenting to be called, often also contain arbitration agreements within the website, within the terms and conditions or the privacy policy. I'm sure the Court's familiar with click-wrap agreements and other aspects of online consent and online arbitration agreements.

Our general practice in representing this particular client is, oftentimes there is such an arbitration provision contained within these website opt-ins. My client does not control the websites, they purchase leads from various third parties, web publishers control the content of the websites. We've been unable, thus far, to get the terms and conditions of the website where this lead with her telephone number was -- was -- was provided, from all of those years back.

So I've not yet been able to confirm whether in fact there is an arbitration provision, but I also can't waive the potential that there is, which is why we both said it in our report, as well as raised it as an affirmative defense, and we're continuing to try to figure that out, as well as to figure out whatever the connection might be here with Best Insurance Group.

THE COURT: Well, in terms of figuring it out, could you issue a subpoena to the website hoster or whatever the hell it's called, and get the information?

MR. BACKMAN: Yes. I think the problem is we're still tracking some things down because of the time here. I'm not remembering, as I sit here, I think it goes back to well before even these 2022 texts that the plaintiff refers to, from what appears to be a different entity completely. So we are trying to track that down. As soon as I'm able to issue a third-party subpoena, if it comes to that, I'm absolutely going to.

THE COURT: I guess I'm not understanding. Is -- when you -- you're telling me that you know the website from which you purchase the lead; is that the idea?

MR. BACKMAN: We know the website where the lead was generated. So -- is -- I don't know if the Court is familiar with third-party platforms called Jornaya or ActiveProspect, TrustedForm, where there is an overlay through a third-party provider that kind of tracks what's happening on a particular website. So there was --

THE COURT: Mr. Backman, I can barely use my own cellphone, so I have no idea what you're talking about.

MR. BACKMAN: Okay.

THE COURT: But here's what I'm talking about. When I get these issues of arbitration and when there is a

possible arbitration, I'm particularly sensitive, in light of developments in the Sixth Circuit and two cases that are peculating in our Circuit, about the need to get on top of the arbitration question first, before we get into the merits of case.

And I appreciate you putting it right up front in the 26(f) report. That's what's supposed to happen to make sure there's no waiver here. But what I'm -- the part that I could use your help understanding is if there is this, entity, platform, whatever the word is, why can't you, when we're done with this call, in the next couple days, crank up a subpoena that I'll authorize you to issue, that says give me every document related to this person and this phone number from today back to ten years, and give it to me in 30 days, and then we would know. Am I missing something here?

MR. BACKMAN: We can certainly start that process. The problem is that all we know is the website. From the website we try to figure out who the web publisher may be, currently, and who it may have been, you know, three, four, five years ago, because, as I said, and I think this is, at least from our perspective, where the problem lies, is that while we found a lead doing our own research into the telephone numbers associated with the plaintiff in this case, her case is not about any text messages from my client. It is about some third-party text messages. So I don't even

know that what I'm looking at has anything to do with the basis for her lawsuit here.

But the short answer is, I could try to figure out, you know, a publisher associated with that website and start that process and, you know, the first response may be that you've got the wrong party, try again, but I'm happy to go down that road.

THE COURT: Mr. Ginsburg, are you speaking for the plaintiff?

MR. GINSBURG: Yes, Your Honor, and my co-counsel may have some additional thoughts. But what I would say is what we're hearing is the problem with the telemarketing industry as a microcosm. What Mr. Backman is effectively saying is Ms. Kimble's data was acquired somewhere. Someone submitted Ms. Kimble's data, therefore it's possible that there is arbitration. And in these cases, you'll generally hear this same argument that, well, there must be consent, because the call recipient's data was transmitted through some website.

As Your Honor knows, an arbitration agreement requires that two parties agree to arbitrate any dispute. USHEALTH and USHEALTH Advisors and Freedom Life do not have any such agreement. If they did, they would move to compel arbitration on that ground.

The prospect that there could theoretically be an

arbitration agreement is something that would be true in every instance of telemarketing, because somebody's data is always sent from somewhere.

THE COURT: So it's your -- it sounds like it's your preference to proceed ahead with the litigation now and they can do discovery, and if they find an arbitration provision, your view is we'll take it up when they find it?

MR. GINSBURG: Yes. Just as a defendant or any party can move for summary judgment at any time, they could also theoretically move to compel arbitration at any time. They certainly have done their part in not waiving arbitratability, if it exists. And, Your Honor, if they present an agreement between Marcia Kimble and USHEALTH to arbitrate, or if something similar, if they show that Ms. Kimble signed up to get these text messages or something, then we don't want to the waste the Court's time, we don't want to waste Mr. Backman's time or USHEALTH or anybody. So certainly, that could be true, but what we have heard so far, and we talked about this in our 26(f) conference, too, is it is just simply a reservation of rights about the defense that theoretically could exist, which always could exist.

So there is nothing preventing going forward with litigation, from our vantage point. And, you know, we welcome any evidence from Mr. Backman, as always. That would --

THE COURT: All right. Here's -- it sounds like we will be fine, but here's what I want to avoid. I think today's Friday, it may be Monday or Friday of last week, I issued a long opinion about whether a party waived its right to seek to compel arbitration by participating in the litigation. That was a lot of work and I'm still tired. I don't want to do that again.

It sounds like you're acknowledging that they have raised it right out of the gate. We have had a discussion about it, about whether we should take a timeout and focus only on arbitration. You're satisfied that if we are going ahead on all fronts, that you don't deem that to be a waiver. Is that correct?

MR. GINSBURG: Yes, Your Honor. May the record reflect plaintiff agrees that the defendants in this case have preserved their right to raise arbitratability.

THE COURT: Okay. All right. Then I will go ahead and issue a scheduling order, and you guys can litigate the case in the normal course.

And, Mr. Backman, if and when you find your arbitration agreement, you can raise it then.

I still think it's important that if you find it, you move quickly and you bring it to my attention right away. I would ask that you make that part of your initial discovery efforts, but we don't have to stop the rest of the case while

you are looking for it.

MR. ROBERTS: Judge, may I make one just very brief comment on that point?

THE COURT: Yep.

MR. ROBERTS: What we would not agree to is if the arbitration -- supposed arbitration agreement was discovered and it's just -- and we continue to litigate the case and they don't quickly move to compel arbitration, then I think we would have a different argument that they have potentially waived it. But as we sit here right now, with no arbitration agreement, I think what Jake said is completely accurate. I just don't want to be in a position where they have the arbitration agreement -- I doubt Jeff would do this -- sit on it, we get to the point of class certification, and then they suddenly moved to compel arbitration. I don't think that's fair to our side, either.

THE COURT: It seems to me that maybe, Mr. Backman, if you find an arbitration agreement, could you at least bring it to plaintiff's attention within 30 days of when you find it?

MR. BACKMAN: Yeah, I don't see that as being a problem. We don't intend to sit on it. If we find it, we are, of course, going to move to compel arbitration. And I am inclined -- I understand what Jake and Chris -- what Mr. Roberts and Mr. Ginsburg are saying. I appreciate their

candor. I appreciate that we haven't waived. That's certainly a concern that defendants always have, as the Court is obviously well aware. I also appreciate what you gathered us here to do today, Judge. And I would welcome the opportunity to first focus on, one, is Marcia Kimble even suing the proper party, since the two text messages she identifies refer to a competitor of my client, not my client? And, two, can we identify this arbitration agreement or whether one even exists on a particular opt-in website associated with Ms. Kimble's lead on the front end? I'd be happy to do that.

THE COURT: Well, you guys focus on whatever you want. I'm not going to phase the discovery. I assume Mr. Ginsburg and Mr. Roberts have a good-faith basis for suing your client, even though you're contending the text came from the competitor. If they lack that basis and you show me later on, they'll have a problem, but I'm assuming there's a basis for this case. These guys have been around the block on these before. And I will enter a scheduling order, and you guys can get off to the races, and I will look forward to the first time we see each other in some sort of a motion hearing.

So thank you --

MR. BACKMAN: Appreciate it, Judge.

MR. GINSBURG: Thank you, Judge.

THE COURT: Thank you very much for your time. I appreciate it.

MR. BACKMAN: Have a great weekend.

MR. GINSBURG: Thank you.

(Proceedings concluded at 11:22 a.m.)

_ _ _

C E R T I F I C A T I O N

I, Robert L. Smith, Official Court Reporter of the United States District Court, Eastern District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing pages comprise a full, true and correct transcript taken in the matter of MARCIA KIMBLE vs. US HEALTH GROUP, INC., Case No. 24-12987, on Friday, February 28, 2025.

s/Robert L. Smith
Robert L. Smith, RPR, CSR 5098
Federal Official Court Reporter
United States District Court
Eastern District of Michigan

Date: 03/22/2025
Detroit, Michigan